

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
01/09/2019

| | | |
|---|---|---|
| IN RE: § | | |
| **ULTRA PETROLEUM CORP.,** *et al* § | **CASE NO: 16-32202** | |
| Debtor(s) § | | |
| § | **CHAPTER 11** | |
| § | | |
| **SOUTHERN CALIFORNIA PUBLIC** § | | |
| **POWER AUTHORITY,** *et al* § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | **ADVERSARY NO. 17-03044** | |
| § | | |
| **ULTRA RESOURCES, INC.,** *et al* § | | |
| Defendant(s) § | | |

### REPORT AND RECOMMENDATION TO WITHDRAW REFERENCE

This Report and Recommendation involves two matters—adversary proceeding No. 17-03044, and an objection to claim filed in case No. 17-30560. Both disputes focus on the allocation of liability for net profit payments owed under various agreements covering oil and gas leases located in Sublette County, Wyoming. The parties are all successors in interest to the original parties to the agreements outlined below.

The immediate issue before the Court is Anadarko E&P Onshore LLC's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

On February 9, 2017, Southern California Public Power Authority and Turlock Irrigation District initiated this adversary proceeding against Ultra Resources, Inc. The filing was prior to the confirmation of Ultra's Chapter 11 Plan of Reorganization. Plaintiffs, as successors in interest, are non-operating working interest owners of certain oil and gas leases located in Sublette County, Wyoming. Ultra is the operator for the Plaintiffs' leases on the Pinedale Fields. Plaintiffs claim that, despite a Wyoming Supreme Court ruling over the appropriate rights and

obligations of the parties under the Pinedale Leases, Ultra continues to miscalculate and overcharge working interest owners for the NPI owed under those leases. Ultra disputes the Plaintiffs' allegations.

On May 16, 2017, Ultra filed a counterclaim joining Anadarko E&P Onshore LLC as a third-party defendant in the current adversary proceeding. Subsequently, on June 28, 2018, Anadarko filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Abstention, or for Judgment on the Pleadings. Anadarko argues that the Court lacks subject matter jurisdiction over Ultra's counterclaim, or, alternatively, that even if the Court finds that subject matter jurisdiction exists, it should decline from exercising such in this case. Specifically, Anadarko argues that because Ultra's counterclaim was filed post-confirmation, it is subject to the Fifth Circuit's more restrictive post-confirmation jurisdictional standard and fails under that standard. Ultra maintains that the Court has subject matter jurisdiction over Anadarko's claim, because it is inextricably intertwined with the Plaintiffs' claims. Ultra further argues that both the Plaintiffs' and Anadarko's claims should be litigated together, so that the working interest owners are bound by one judgment.

Tied into this dispute is case No. 17-30560, involving Ultra's Proof of Claim in Vanguard's chapter 11 bankruptcy. Vanguard Natural Resources, LLC, currently owns a non-operating working interest in the Pinedale Leases similar to the Plaintiffs. Shortly, after Vanguard filed for chapter 11 bankruptcy, Ultra filed Proof of Claim No. 680. A substantial portion of Ultra's proof of claim is premised on an amount allegedly owed under a Supplemental Accounting Agreement. Ultra claims—as it does with the Plaintiffs and Anadarko—that Vanguard has failed to make payments under the Supplemental Accounting Agreement in accordance with its terms and is therefore entitled to a reimbursement. Vanguard maintains the

same position as both Plaintiffs and Anadarko—it owes no reimbursement amounts to Ultra because Ultra continues to incorrectly calculate the amounts owed under the Supplemental Accounting Agreement contrary to the Wyoming Supreme Court's decision.

The dispute underlying both Anadarko's Motion to Dismiss, and Ultra's Proof of Claim in Vanguard's case concerns the effect of the Wyoming Supreme Court's rulings on each of the parties' obligations under the Pinedale Leases. For the reasons set forth below, the Court recommends that the District Court withdraw the reference to the Bankruptcy Court as to adversary proceeding No. 17-03044, and as to Vanguard's claim objection filed at ECF No. 1917 in case No. 17-30560.

## Background

### I. The Net Profits Contract

In the 1950s, Malco Refineries, El Paso Natural Gas Company, and Continental Oil Company (the "First Parties") sought to develop oil and gas interests in Sublette County, Wyoming. (ECF No. 1 at 5). Because Novi Oil Company ("Novi") controlled certain leases that the First Parties wanted to include in their development plans, the First Parties and Novi entered into an assignment agreement whereby Novi would assign three federal leases and one fee lease to the First Parties in exchange for payment of Net Profits Interest ("NPI"). (ECF No. 1 at 5).

On April 1, 1954, consistent with the requirements of the assignment agreement, Novi and the First Parties entered into the Net Profits Contract ("NPC"). (ECF No. 1 at 6). The NPC stated, in relevant part, that:

> First Parties agree to pay to Novi a sum or sums representing 5% of the net profits . . . resulting from operations for oil and gas by First Parties . . . . In the event that leases other than said leases are committed to the Pinedale Unit, the manner of allocating production, revenue and expenses of unit operations shall be determined as provided in the Unit Agreement and such Unit Operating Agreement as First Parties and lessees of

such other leases shall enter upon. Net profits as used herein shall mean the gross revenue . . . .

(ECF No. 1-1 at 2–3).[1]

The NPI is now owned by Novi's successors, some of which are composed of the NPI owners whom are a part of the Wyoming litigation described further below (the "Hartman Group"). (Case No. 17-30560, ECF No. 1367 at 6).

## II. The Supplemental Accounting Agreement

On May 7, 1954, the First Parties entered into the Supplemental Accounting Agreement ("SAA"), with the purpose of governing the responsibilities for satisfying the NPI obligations created under the NPC. (ECF No. 1 at 6; ECF No. 12 at 6). In essence, the SAA provides a mechanism by which Ultra—the successor in interest to the original operators of the oil and gas leases—was to receive from the other working interest owners each parties' share of the NPI obligations burdening their respective leasehold interests. (Case No. 17-30560, ECF No. 1367 at 6).

At the time of their execution, both the NPC and the SAA anticipated the creation of a "Pinedale Unit Area." The agreements envisioned that the Unit would have "an operator collecting revenue from the non-operators, aggregating expenses associated with the NPI properties, performing the NPI calculations, making NPI payments, and reconciling revenues collected and expenses incurred with the various parties burdened by the NPI according to the SAA." (Case No. 17-30560, ECF No. 1367 at 6).

The language of the NPC, collectively with the rights and responsibilities set out in the SAA, have been the subject of litigation in Wyoming.

---

[1] The interpretation of this language is the subject of prior and current litigation.

### III. The Hartman Litigation

For a number of years, no NPI was paid by or to any party. (ECF No. 1 at 7). This prompted NPI Owners—successors in interest to Novi—to initiate a lawsuit in Wyoming state district court. (ECF No. 99 at 4). As a part of the litigation, "it became necessary for the District Court to determine the proper method for allocating the NPI burden among the individual working interest owners." (ECF No. 51 at 7).

The Wyoming district court concluded that the NPI liability owed by each working interest owner must be determined by "dividing that party's revenues by the total revenues attributable to the NPI leases." *Ultra Res., Inc. v. Hartman*, 226 P.3d 889, 935 (Wyo. 2010). On appeal, the Wyoming Supreme Court affirmed, holding that the SAA requires calculation of the NPI Allocations based on revenues, not profits. *Id*. ("While we agree that the Unit NPI Contract focuses on net profits, that does not change the fact that the First Parties agreed to use the Supplemental Accounting Agreement to allocate the NPI burden among themselves and the Supplemental Accounting Agreement allocates on the basis of revenues.").

The parties, however, continue to dispute the method by which Ultra should make its NPI payment calculations. Ultra maintains the position that the SAA allocates the NPI payments on the basis of net profits. (Case No. 17-30560, ECF No. 1367 at 10). The non-working interest owners, on the other hand, argue that Ultra's incorrect calculations violate the SAA, are contrary to the Wyoming Supreme Court's ruling, and resulted in an overcharge to the non-working interest owners.

**Procedural History**

*I. The Anadarko Dispute*

Ultra Petroleum Corp., and seven of its subsidiary companies, including Ultra, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on April 29, 2016. (Case No. 16-32202, ECF No. 1). Anadarko did not file a proof of claim in those chapter 11 cases. (ECF No. 99 at 3). On March 14, 2017, the Court confirmed Ultra's Plan of Reorganization (the "Plan"). (Case No. 16-32202, ECF No. 1325). The Plan was substantially consummated on April 12, 2017. (*See* ECF No. 1731).

On February 9, 2017, Southern California Public Power Authority ("SCPPA") and Turlock Irrigation District ("TID"), collectively, Plaintiffs, initiated this adversary proceeding against Ultra, prior to confirmation of Ultra's chapter 11 Plan. (*See* ECF No. 1). Plaintiffs, as successors-in-interest, are non-operating working interest owners of certain oil and gas leases located in Sublette County, Wyoming ("Pinedale Field"). (ECF No. 1 at 1). Ultra is the operator of the Plaintiffs' leases in the Pinedale Field pursuant to, among other similar and applicable operating agreements, the Model Form Operating Agreement (the "Joint Operating Agreement") dated June 30, 2005. (ECF No. 1 at 2).[2]

Plaintiffs allege that since May 2014, Ultra has provided periodic invoices to Plaintiffs demanding payments of NPI amounts pursuant to Ultra's interpretation of the NPC and the SAA. (ECF No. 1 at 2). Plaintiffs argue that, despite the Wyoming Supreme Court's ruling, Ultra has been wrongfully calculating their NPI allocations based on the parties' respective *net profits,* as opposed to the parties' *gross revenue* derived from the Pinedale Field leases. (ECF No. 1 at 3).

---

[2] Both Ultra and Vanguard are parties to "(a) an Operating Agreement dated June 18, 1997, (b) an Operating Agreement dated November 14, 1997, and (c) two Operating Agreement[s] dated October 25, 2001, each covering different leases (collectively the 'JOAs'). Each of the JOAs covers oil and gas leases in the Pinedale Field, Sublette County, Wyoming." (Case No. 17-30560, ECF No. 1065 at 2).

Plaintiffs maintain that Ultra's miscalculation of the working interest owners' apportioned liability for NPI caused both SCPPA and TID to overpay $2,484,650.55. (ECF No. 1 at 22). Plaintiffs seek an accounting and refund of their alleged overpayments.

On May 16, 2017, Ultra filed a Counterclaim and Joinder of Counter-Defendants pursuant to Federal Rule of Civil Procedure 20(a), seeking declaratory relief as to the parties' rights and obligations under the SAA and turnover amounts allegedly owed to Ultra by working interest owners. (*See* ECF No. 12; ECF No. 100 at 9). Pursuant to Ultra's counterclaim, Anadarko E&P Onshore, LLC was joined as a third-party defendant in the current adversary proceeding. (ECF No. 12). Anadarko was a working interest owner in the Pinedale Field until October 1, 2013, when it assigned its interests to Encore Energy Partners (now Vanguard Natural Resources, LLC). (ECF No. 99 at 5). In its counterclaim, Ultra "seeks a declaratory judgment regarding the proper method of allocating the net profits obligations among the working interest owners as well as an order requiring certain working interest owners to turn over property of the estate in the form of withheld reimbursements owed [to] Ultra for NPI payments Ultra has made to the net profits owners under the NPC." (ECF No. 12 at 5). Specifically, Ultra seeks $1,174,656.91 in reimbursement from Anadarko. (ECF No. 12 at 14). Anadarko denies that it owes Ultra any payments under the SAA and claims a right to setoff as an affirmative defense. (ECF No. 99 at 5).

In response to Ultra's counterclaim and joinder, Anadarko filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Abstention, or for Judgment on the Pleadings on June 28, 2018. (*See* ECF No. 99). Anadarko argues that (i) the Court lacks subject matter jurisdiction over Ultra's counterclaim; (ii) if the Court finds it has subject matter jurisdiction, it should decline from exercising such in this case; or (iii) if the Court finds it has subject matter

jurisdiction and declines to abstain, Anadarko is entitled to judgement on the pleadings. (*See* ECF No. 99). Specifically, Anadarko argues that jurisdiction does not exist because Ultra's claims will have no bearing on the implementation or execution of the Plan since the counterclaim was filed post-confirmation. (ECF No. 99 at 7–11). Alternatively, if subject matter jurisdiction exists, permissive abstention weighs against this Court exercising jurisdiction, and Ultra's turnover action fails on the pleadings because no estate exists which can receive the alleged debt. (ECF No. 99 at 11–17).

Ultra filed its Response to Anadarko's Motion to Dismiss on July 19, 2018. (*See* ECF No. 100). Ultra maintains that the Court has subject matter jurisdiction over Anadarko's counterclaim pursuant to 28 U.S.C. §§ 1334 and 157, as a case "arising under," "arising in," or "related to" the Chapter 11 proceeding. (ECF No. 100 at 5). Ultra claims that its joinder of Anadarko as a party to this adversary proceeding is proper, "because Ultra's counterclaims arise from the same transactions and occurrences and involve the same legal and factual questions as the claims brought by SCPPA and TID." (ECF No. 100 at 9). Ultra further argues that even if this Court finds it lacks subject matter jurisdiction over its counterclaim, that the appropriate remedy is withdrawal of reference to the District Court as opposed to a dismissal. (ECF No. 110 at 7). Ultra asserts that keeping Anadarko as a third-party defendant in this adversary is warranted to "ensure that the entire dispute presented by SCPPA and TID's adversary proceeding is resolved at the same time, as efficiently as possible." (ECF No. 100 at 15).

The Court held a hearing on July 23, 2018 at which it requested further briefing from the parties on (i) a court's subject matter jurisdiction when a lawsuit and a third-party complaint in a lawsuit straddle the confirmation date; and (ii) whether the federal district court has subject matter jurisdiction, and if so, whether the appropriate relief is to recommend a withdrawal of

reference rather than grant a motion to dismiss. (ECF No. 103 at 10–11). Both parties submitted their supplemental briefing on August 31, 2018. (ECF No. 110; ECF No. 111).

On September 5, 2018, the Court held it did not have subject matter jurisdiction over Ultra's counterclaim against Anadarko. (ECF No. 113 at 37). Consequently, the Court recommends that the District Court withdraw the reference as to adversary proceeding No. 17-03044.

## II. *Vanguard's Case No. 17-30560*

Concurrent with the development of the adversary case detailed above, is Vanguard's—Anadarko's successor in interest—own bankruptcy case. Vanguard Natural Resources, LLC, owns a non-operating working interest in certain mineral interests in the Pinedale Area of Sublette County, Wyoming. Vanguard filed for chapter 11 bankruptcy on February 1, 2017. (Case No. 17-30560, ECF No. 1). Vanguard's Plan of Reorganization was confirmed on July 18, 2017, with an effective date of August 1, 2017. (Case No. 17-30560, ECF No. 1917 at 2). On April 25, 2017, Ultra filed Proof of Claim Number 680, alleging a right to a secured claim in the aggregate amount of $1,829,947.51.

Initially, under its Second Amended Plan of Reorganization, Vanguard sought to assume "certain contracts with Ultra." (Case No. 17-30560, ECF No. 1232 at 1). As a consequence of the alleged assumption, Ultra filed an Objection to Cure Amounts, claiming that Vanguard owed Ultra two separate amounts under the contracts at issue—$47,673.00 under the SAA, and $2,447,207.92 under the JOAs—on July 14, 2017. (Case No. 17-30560, ECF No. 1065 at 4). Ultra also filed a Motion for Relief from Stay, seeking to join Vanguard in the adversary proceeding styled above. (Case No. 17-30560, ECF No. 1078). Ultra argued that lifting the stay to add Vanguard as a party to the adversary proceeding was appropriate given that Vanguard's

claim was identical to those of the Plaintiffs. (Case No. 17-30560, ECF No. 1078 at 5). Vanguard opposed Ultra's motion to involve it in the adversary proceeding. (Case No. 17-30560, ECF No. 1139).

On August 3, 2017, the Court ordered Ultra and Vanguard to file cross-motions for summary judgment on the portion of Ultra's cure claim concerning the proper methodology for allocating the NPI burden. (Case No. 17-30560, ECF No. 1232 at 2). The Court required that the parties agree to a "single schedule, applicable to all parties in both the Vanguard cases and the Ultra adversary proceeding." (Case No. 17-30560, ECF No. 1232 at 2). On August 8, 2017, the Court scheduled Vanguard and Ultra's motions for summary judgment "directed at the interpretation of the Net Profits Contract and the Supplemental Accounting Agreement in connection with [] Mediation." (Case No. 17-30560, ECF No. 1244 at 2).

In accordance with the Court's schedule, the parties filed a series of motions for summary judgment:

- Reorganized Debtors' Motion for Partial Summary Judgment on Cure Demand Filed by Ultra Resources Inc. (Case No. 17-30560, ECF No. 1363).

- Ultra Resources, Inc's Motion for Partial Summary Judgment. (Case No. 17-30560, ECF No. 1367).

- Ultra Resources, Inc.'s Consolidated Response to Plaintiff/Counter-Defendants' Motions for Summary Judgment. (Case No. 17-30560, ECF No. 1425).

- Reorganized Debtor's Objection to Ultra Resources, Inc.'s Motion for Partial Summary Judgment. (Case No. 17-30560, ECF No. 1431).

- Ultra Resources, Inc.'s Consolidated Reply to Reorganized Debtors' Motion for Partial Summary Judgment on Cure Demand. (Case No. 17-30560, ECF No. 1454).

On August 23, 2018, while the summary judgment motions were pending, Vanguard exercised its rights under its confirmed plan to reject its obligations under the SAA. (Case No. 17-30560, ECF No. 1916). That same day, Vanguard also objected to Ultra's Proof of Claim

No. 680.  (Case No. 17-30560, ECF No. 1917).  Ultimately, the parties failed to reach an agreement through mediation, and the Court set a date to conduct a combined hearing to consider all pending motions for summary judgment.

Vanguard was present at the September 5, 2018 hearing at which the Court held that it did not have subject matter jurisdiction over Ultra's Counterclaim against Anadarko.  (ECF No. 113 at 37).  As a result, the Court did not reach the substantive questions presented in the summary judgment motions.  (ECF No. 113 at 37).  Furthermore, the legal and factual basis for Vanguard's objection to Ultra's proof of claim is identical to that of its Summary Judgment Motions—Ultra's alleged incorrect calculations of the amount owed under the Supplemental Accounting Agreement by non-operating working interest owners.  (Case No. 17-30560, ECF No. 1917).  Consequently, the Court recommends that the District Court withdraw the reference as to Vanguard's claim objection in case No. 17-30560, as it involves the same dispute presented in the above styled adversary case.

## **Analysis**

Pursuant to 28 U.S.C. § 157(d), a proceeding must be withdrawn from a bankruptcy court if the resolution of that proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).  "[W]ithdrawal must be granted if it can be established (1) that the proceeding involves a substantial and material question of both Title 11 and non-Bankruptcy Code federal law; (2) that non-Code federal law has more than a de minimis effect on interstate commerce; and (3) that the motion to withdrawal was timely."  *In re Nat'l Gypsum*, 145 B.R. 539, 541 (N.D. Tex. 1992).

Even if withdrawal of the reference is not mandatory, 28 U.S.C. § 157(d) provides that the "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). In determining whether cause exists for reference in this case to be withdrawn, courts weigh six factors: (i) the goals of promoting uniformity in the bankruptcy administration; (ii) reducing forum shopping and confusion; (iii) conservation of the debtors' and creditors' resources; (iv) expediting the bankruptcy process; (v) the right of the party to a jury trial; and (vi) whether the proceeding is core or non-core. *In re Quality Lease & Rental Holdings, LLC*, No. 14-60074, 2016 WL 416961, at *4 (Bankr. S.D. Tex. Feb. 1, 2016) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985); *see In re Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996). "The majority of courts evaluating a request to withdraw the reference place paramount importance on whether the claims at issue are core or non-core." *In re Quality Lease*, 2016 WL 416961, at *5.

The crux of the issue before the Court, however, is whether subject matter jurisdiction exists under 28 U.S.C. § 1334.

### I. Absence of § 1334 Subject Matter Jurisdiction

It is undisputed that Ultra filed its counterclaim against Anadarko subsequent to the confirmation of its Plan of Reorganization. (*See* ECF No. 100 at 9 (indicating that Ultra's counterclaim was filed after the Court confirmed the Plan)). Ultra argues, however, that the date governing the Court's subject matter jurisdiction over the counterclaim is not the date the counterclaim was filed, but rather the date this adversary proceeding was filed, which occurred prior to confirmation of the Plan. (ECF No. 100 at 10).

Anadarko contests this assertion, arguing that Ultra's counterclaim is governed by the Fifth Circuit's narrow post-confirmation jurisdictional standard, which exists only for matters pertaining to the implementation or execution of a plan. (ECF No. 99 at 2). Anadarko maintains that unlike the Plaintiffs, it "did not commence any adversary proceeding regarding the SAA, did not seek to intervene in this adversary proceeding, did not file a proof of claim, and did not [otherwise] participate in the chapter 11 cases." (ECF No. 99 at 1). Consequently, Anadarko argues, the Court does not have subject matter jurisdiction over Ultra's counterclaim because it is a post-confirmation claim that will have no bearing on the implementation or execution of the Plan.

### a. *Jurisdiction under 28 US.C. § 1334*

Section 1334 provides that district courts have subject matter jurisdiction over all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). With respect to bankruptcy cases that remain open, the Fifth Circuit has held that "it is not necessary to distinguish between proceedings 'arising under,' 'arising in a case under,' or 'related to a case under,' title 11." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). The Fifth Circuit noted that § 1334(b)'s language operates "conjunctively to define the scope of jurisdiction." *Id*. Consequently, a bankruptcy court need only "determine whether a matter is at least 'related to' the bankruptcy." *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) (citing *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995); *In re Wood*, 825 F.2d at 93)). The test is "whether the outcome of the proceeding could conceivably have any effect on the estate being administered in the bankruptcy." *In re Wood*, 825 F.2d at 93; *see In re Forth Worth Osteopathic Hosp. Inc*, Nos. 4:07–CV–206–Y, 4:07–CV–457–Y, 4:07–CV–553–Y, 4:07–CV–624–Y, 2008 WL 2522528, at * 2 (N.D. Tex. June 25, 2008) ("For jurisdiction to attach, the anticipated outcome of the action

must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate.").

However, the counterclaim against Anadarko was filed after confirmation and substantial consummation of Ultra's Plan of Reorganization. "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Craig's Stores of Texas, Inc.*, 225 F.3d 388, 390 (5th Cir. 2001). "[E]xpansive bankruptcy court jurisdiction required to facilitate 'administration' of the debtor's estate" is not appropriate for matters that "comport[] more closely with the effect of a successful *reorganization*," rather than an effect on the debtor's estate. *Id*. at 390–391 (emphasis added). Post-confirmation "related to" bankruptcy jurisdiction is restricted to matters pertaining to implementation or execution of the reorganization plan. *In re Enron Corp. Securities, Derivative & ERISA Litigation*, No. G-05-0012, H-01-3624, 2005 WL 1745471 at *4 (S.D. Tex. July 25, 2005) (citing *In re Craig's Stores*, 255 F.3d at 390).

Ultra claims jurisdiction exists based on the relatedness between the Plaintiffs' complaint and its own counterclaim against Anadarko. There is no question, Ultra maintains, that the Court has subject matter jurisdiction over the Plaintiffs' adversary complaint. (ECF No. 100 at 11). It is also undisputed that both the Plaintiffs' complaint and Ultra's counterclaim "arise under the exact same controversy." (ECF No. 100 at 11). Consequently, Ultra argues, the Court has "related to" jurisdiction over its counterclaim against Anadarko because the claim arises out of the same circumstances and raises the same questions as those posed by SCPPA and TID's pre-confirmation complaint. (ECF No. 100 at 12). In effect, "Ultra is simply trying to ensure that

the entire dispute presented by SCPPA and TID's adversary proceeding is resolved at the same time, as efficiently as possible." (ECF No. 100 at 15).

It is well established that the mere existence of common facts and circumstances in a bankruptcy proceeding and a separate action does not create "related to" jurisdiction, nor can judicial economy suffice to exercise jurisdiction where the suit is otherwise unrelated to the bankruptcy proceeding." *In re Enron Corp. Securities*, 2005 WL 1745471 at *2. Ultra cannot use the "common facts and circumstances" between SCPPA and TID's pre-confirmation complaint and its counterclaim against Anadarko to bring the counterclaim under § 1334(b)'s "related to" jurisdiction. Under § 1334(b)'s broad jurisdictional standard, Ultra must show that the outcome of its counterclaims "could conceivably have any effect on the estate being administered in the bankruptcy." *In re Wood*, 825 F.2d at 93. Ultra's counterclaim was filed after there was no longer an estate to administer. Ultra cannot make the appropriate showing to establish jurisdiction under § 1334(b).

Ultra's argument further fails to specify what, if any, effect its counterclaim against Anadarko will have on the interpretation or execution of its Plan of Reorganization. *See In re Craig's Stores*, 266 F.3d at 391 (finding that in order to fall "within the bankruptcy court's post-confirmation jurisdiction" the claim must "bear on the interpretation or execution of the debtor's plan"). Although Ultra indicates that "SCPPA and TID's pre-confirmation complaint lands squarely within the statutory definition of a 'related to' proceeding under 28 U.S.C. § 1334(b) because of its impact on Ultra's rights, liabilities, options, or freedom of action," it fails to delineate how its counterclaim against Anadarko will bear upon the execution or interpretation of its Plan. (ECF No. 100 at 12). Ultra cannot rely on the similarities between the two causes of

action to establish that its counterclaim against Anadarko invokes "related to" jurisdiction under the Fifth Circuit's narrow post-confirmation jurisdictional standard.

Subject matter jurisdiction under 28 U.S.C. § 1334 does not exist over Ultra's counterclaim against Anadarko. Anadarko's alternative arguments are rendered moot as a result of the Court's finding that no § 1334 subject matter jurisdiction exists over Ultra's counterclaim.

## II. The District Court Has Supplemental Jurisdiction under 28 U.S.C. § 1367

### a. *Adversary Proceeding No. 17-03044*

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Fifth Circuit has held, however, that even where a District Court "could reach a third-party claim under its supplemental jurisdiction, a bankruptcy court does not have supplemental jurisdiction to reach such claims." *In re Walker*, 51 F.3d 562, 570 (5th Cir. 1995). There is no indication under 28 U.S.C. § 157's jurisdictional grant that "district courts may refer to bankruptcy courts any cases that were before the district courts only on the basis of supplemental jurisdiction." *Id*. at 573. "[I]t would be somewhat incongruous to gut this careful system by allowing bankruptcy courts to exercise supplemental jurisdiction to pull into bankruptcy matters Congress excluded in its specific jurisdictional grants." *Id*. (citations omitted).

The parties do not dispute that the District Court has subject matter jurisdiction over Ultra's counterclaim. (ECF No. 113 at 9, 24 ("[T]he district court could exercise jurisdiction under § 1367 [because] the claims that Ultra has brought against Anadarko . . . have factual and legal overlap with the claims that undisputedly arise under Section 1334."); ECF No. 110 at 7

("The District Court has [] original and supplemental jurisdiction required to hear all [] claims in this case.")).

Ultra maintains that the appropriate remedy where lack of subject matter jurisdiction exists, is a Report and Recommendation to the District Court to withdraw the reference as opposed to granting Anadarko's Motion to Dismiss. Ultra proposes two alternatives for the Court's Report and Recommendation. Ultra indicates that the Court should (i) withdraw the reference as to the third-party claim against Anadarko and allow the parties to litigate the rest of the case in Bankruptcy Court; or, alternatively, (ii) withdraw the reference to the third-party claim against Anadarko and recommend that all pretrial matters including "ruling on the parties' numerous motions, remain in the Bankruptcy Court." (ECF No. 110 at 10; ECF No. 113 at 25).

Ultra's own arguments, however, contradict its first alternative. At the hearing on Anadarko's Motion to Dismiss, Ultra indicated that its principal goal is to have all working interest owners, who are bound by the SAA, "subject to the same judgment and in the same forum." (ECF No. 113 at 24). Ultra, in joining Anadarko as a third-party defendant and attempting to lift the stay to join Vanguard in the same manner, seeks to litigate the underlying dispute jointly with the parties at issue. Segregating the parties' claims between the Bankruptcy and District Courts would thwart Ultra's goal. (*See* ECF No. 100 at 6 ("The Court should decide this case as to all working interest owners in order to further the economy of time and resources."))

Furthermore, the absence of § 1334 subject matter jurisdiction over Ultra's counterclaim forecloses Ultra's second alternative. To support its proposition, that the District Court leave all pretrial matters with this Court, Ultra cites *In re Osteopathic Hosp.*, 2008 WL 2522528, at * 3. (ECF No. 110 at 10). In *In re Osteopathic Hosp.*, the district court allowed a "third-party action

to remain with the bankruptcy court for the limited purpose of coordinating discovery and addressing all pretrial matters, including any dispositive motions." *Id*. at *5. The district court in that case, however, also concluded that the bankruptcy court "enjoy[ed] 'related to' jurisdiction because the bankruptcy judge [had previously] found that the third-party action could conceivably affect the administration of the Hospital's bankruptcy estate." *Id*. The facts of the issue before the Court are dissimilar. Here, the Court finds that § 1334 subject matter jurisdiction over Ultra's counterclaim does not exist at all. In light of the Fifth Circuit's finding that "bankruptcy courts may not exercise supplemental jurisdiction," it is questionable whether this Court's jurisdiction may reach even pre-trial motions regarding Ultra's claim against Anadarko. *See In re Walker*, 51 F.3d 562 at 571 (holding "the bankruptcy court could not exercise supplemental jurisdiction over [the party's] third-party claim"). The Court therefore recommends that the District Court withdraw the reference as to adversary proceeding No. 17-03044.

### b. *Vanguard's Objection to Ultra's Claim in Case No. 17-30560*

Given that Vanguard's objection to Ultra's Proof of Claim relies on the same arguments as those in the adversary proceeding, the Court recommends that the District Court also withdraw the reference as to Vanguard's claim objection in case No. 17-30560. (Case No. 17-30560, ECF No. 1917). As outlined above, a "district court may withdraw, *in whole or in part*, any case or proceeding referred" under § 157 "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d) (emphasis added). A district court may therefore withdraw the reference as to only a portion of a case. *See City of Clinton v. Pilgrim's Pride Corp.*, No. 4:09-CV-386-Y, 2009 WL 10684933 at * 2 (N.D. Tex. Aug. 18, 2009) (withdrawing the reference to an adversary proceeding, but allowing an issue pertaining to Bankr. P. 2019 to

remain in the bankruptcy court); *see also Levine v. M.&A. Custom Home Builder & Developer, LLC*, 400 B.R. 200, 203 (S.D. Tex. 2008) (recommending a partial withdrawal of reference and requesting retention of pending and future pretrial dispositive motions); *In re Brown Medical Center, Inc.*, 578 B.R. 590 (Bankr. S.D. Tex. 2016) (recommending withdrawal of the reference as to the adversary proceeding but seeking to retain all pretrial matters pertaining to the same). Given that Vanguard's objection to Ultra's proof of claim is the only portion of case No. 17-30560 that pertains to the present dispute, only that claim objection (ECF No. 1917) should be withdrawn.

## Conclusion

For the reasons set forth above, the Court recommends that the District Court withdraw the reference as to (i) all of adversary proceeding No. 17-03044; and (ii) the claim objection set forth in ECF No. 1917 in case No. 17-30560.

SIGNED **January 8, 2019.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE