UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SOUTHERN CALIFORNIA PUBLIC POWER AUTHORITY, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:19-cv-00090 |
| ULTRA RESOURCES, INC., | § § | Hon. Vanessa D. Gilmore |
| Defendant/Counter-Claimant, | § § | |
| v. | § § | |
| SOUTHERN CALIFORNIA PUBLIC POWER AUTHORITY, *et al.*, | § § § | |
| Counter-Defendants | § § | |
| GRIZZLY OPERATING, LLC f/k/a VANGUARD OPERATING, LLC, *et al.*, | § § § | |
| Reorganized Debtor, | § § | |
| v. | § § | |
| ULTRA RESOURCES, INC., | § § | |
| Claimant. | § | |

**ORIGINAL PLAINTIFFS' CONSOLIDATED REPLY TO
<u>RESPONSES TO ORIGINAL PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>[1]**

Plaintiffs Southern California Public Power Authority ("<u>SCPPA</u>") and Turlock Irrigation District ("<u>TID</u>"; together with SCPPA, the "<u>Plaintiffs</u>" or "<u>SCPPA/TID</u>"), each of which are creditors in the above-referenced bankruptcy proceeding (the "<u>Bankruptcy Case</u>") and original plaintiffs and counter-defendants in this adversary proceeding (the "<u>Adversary Proceeding</u>"), file

---

[1] Originally filed on October 6, 2017, in Adv. P. No. 17-3044, at Dkt. 77.

1

this their *Consolidated Reply* (the "Reply") in support of their *Original Plaintiffs Motion for Summary Judgment* (the "SCPPA/TID Motion") [Dkt. No. 51] and in reply to (a) *Ultra Resources, Inc.'s Consolidated Response to Plaintiff/Counter-Defendants' Motions for Summary Judgment* (the "Ultra Response") [Dkt. No. 72]; and (b) *Pinedale Energy, Inc. and Standard Energy Corp.'s Response to Original Plaintiffs' Motion for Summary Judgment* (the "Pinedale Response") [Dkt. No. 73], and would respectfully show the Court as follows:

## I.
## CONSOLIDATED REPLY

1. SCPPA, TID, Vanguard, and Anadarko have requested summary judgment on two alternative bases: (a) First, the Wyoming collateral estoppel doctrine necessitates recognition of the Wyoming District Court decision, as affirmed by the Wyoming Supreme Court, that the SAA allocates the Pinedale Unit NPI burden among working interest owners according to the Proportionate Revenue Method;[2] and (b) the SAA plainly and unambiguously also allocates the NPI burden according to the Proportionate Revenue Method. Ultra, Pinedale/Standard, and SWEPI argue, to varying degrees, that this Court should disregard the Wyoming courts' decisions and allocate the Pinedale NPI burden according to each non-settled working interest owner's individual profits. They make this request despite the undisputable fact that every contribution mentioned in the SAA is based upon each party's working interest share of the minerals produced from the Pinedale Field, or the revenues derived therefrom.

2. All of the arguments set forth in the Ultra Response are addressed in the

---

[2] Capitalized terms not defined herein shall have the meaning ascribed in the SCPPA/TID Motion and/or the *Original Plaintiffs' Consolidated Response to Motions for Summary Judgment* (the "SCPPA/TID Response") [Dkt. No. 74].

SCPPA/TID Motion and/or Response, which is incorporated herein as though set forth in full.[3] However, two arguments in the Ultra Response warrant specific reply.

3.     First, Ultra analyzes certain "exceptions" to application of estoppel set forth in the Restatement of Judgments (Second) (the "Restatement") in order to advance its argument that collateral estoppel is a permissive doctrine that should not be applied for equitable reasons, irrespective of whether the Wyoming estoppel test is satisfied. Second, Ultra argues that SCPPA/TID's reading of the SAA results in "profoundly negative consequences" to themselves and other working interest owners. As demonstrated below, both arguments lack merit.

A.     **The Authorities Cited in Ultra's Response Do Not Justify Ultra's Disregard for the Wyoming Courts' Prior Decisions.**

4.     Ultra's argument that the Restatement provides "exceptions" that would allow this Court to disregard the Wyoming courts' prior decisions is yet another attempt to avoid the four-part Wyoming estoppel test. Tellingly, Ultra failed to cite a single Wyoming case where a court ruled that any such "exceptions" allow re-litigation of an issue when the four-factor Wyoming test is satisfied. And the cases cited by Ultra cites are otherwise inapposite. *See* Ultra Response (citing *Delgue v. Curuchet*, 677 P.2d 208 (Wyo. 1984), and *Elliott v. State*, 247 P.3d 501 (Wyo. 2011)).

5.     Importantly, *Delgue* was decided before the Wyoming Supreme Court adopted

---

[3] Provided, however, Exhibit A to the SCPPA/TID Response (the "Ultra Letter") was referenced and attached in response to arguments set forth in the Ultra Motion, and is herein incorporated only for rebuttal purposes. For instance, in the Ultra Response, Ultra argues that there is "no support in . . . contemporaneous evidence, or logic" that the parties intended for the NPI burden to be allocated based on respective working interest revenue; that the relief SCPPA/TID seeks is "absurd"; that the District Court did not decide how NPI obligations would be shared between the working interest owners; and that the Proportionate Revenue Method is "manifestly irrational . . . ." The Ultra Letter directly rebuts these arguments by way of admission from Ultra that it allocated the NPI awarded to the NPI Owners pursuant to each working interest owners' share of the revenues and irrespective of whether each party realized a profit or loss. Ultra Response at ¶¶ 1, 4, 10, and 13. Incorporation of Exhibit A should not (and is not intended by SCPPA/TID to) change the analysis that (a) collateral estoppel bars re-litigation of the issue and (b) the unambiguous terms of the SAA require allocation of NPI obligations by respective working interest ownership.

the current four-factor test for collateral estoppel that Wyoming law now employs. *Cf. Polo Ranch Co. v. City of Cheyenne*, 61 P.3d 1255, 1259 (Wyo. 2003). In that case, in connection with an appeal relating to a prescriptive easement determination, the Wyoming Supreme Court principally analyzed whether the issue was "actually and necessarily before the district court" in the prior action. 677 P.2d at 214. Finding that the "actual and necessary" element was not satisfied, and in light of the Court's "difficulties with respect to the prior judgment," the Court held that the issue was not precluded from litigation.

6.  The *Delgue* holding has no application to this case. Here, Wyoming's subsequently-established four-part test must be applied; the "actual and necessary" element is expressly not included in the current estoppel test; the "identical issue" factor is clearly satisfied; and the facts are substantially and materially different here (Ultra effectively seeking appellate review of the Wyoming courts) than in *Delgue* (the highest Wyoming court electing to determine on the merits a Wyoming real property issue).

7.  *Elliott v. State* also does not advance Ultra's argument. Unlike in *Delgue*, *Elliott* applies the modern Wyoming estoppel test. 247 P.3d at 504. In fact, the entirety of the Court's opinion relates to failure of the "privity" and "full and fair opportunity to litigate" factors. *Id*. (finding that "privity" does not exist between the department of transportation and the district attorney; and finding that an administrative probable cause hearing did not afford a full and fair opportunity to litigate the DWUI charge). While the Court makes a cursory reference to certain estoppel exceptions from the Restatement, it provides zero analysis of the factors and doesn't base its holding, in any way, on any estoppel exception. The Court simply held that the four factors required for collateral estoppel to apply were not satisfied under the facts of that case.

8.  Under current Wyoming law, estoppel must be applied if the four factors

addressed in the SCPPA/TID Motion are satisfied.[4] The *Delgue* and *Elliott* cases do not alter that analysis.

## B. The SAA's Allocation Method, Based upon Working Interest Owners' Proportionate Revenues, Does Not Produce "Profoundly Negative Consequences."

9. Second, Ultra argues that SCPPA/TID's reading of the SAA results in "profoundly negative consequences" to themselves and other working interest owners. Among other reasons, Ultra's conclusion is unfounded because it incorrectly states that SCPPA/TID's SAA interpretation yields payment of 5% revenues but results in receiving no credit for any expenses. Ultra's argument demonstrates a profound misunderstanding and/or mischaracterization of the SAA's allocation steps and the SCPPA/TID briefing.

10. Under the SAA, as explained at length in the SCPPA/TID Motion and Response, the operator is supposed to charge 5% of the total expenses to the net profits account, instead of charging the expenses to individual working interest owners under their joint interest billings. Stated differently, the SAA call for sharing of 5% of the total operating expenses differently, and entirely consistent with the consolidated NPI obligation.

11. Ultimately, the SAA says what it says, and no amount of Ultra table-pounding can alter that fact. The inevitable result of the accounting steps stated in the SAA is that each party contributes to the net profit burden in direct proportion to its working interest share of the minerals it takes from the Pinedale Field, or the revenues it derives from its sale of those minerals.[5] The parties' predecessors agreed to that method, and the parties have not agreed to

---

[4] In any event, as reflected in SCPPA/TID's prior briefing on the collateral estoppel doctrine, none of the possible "exceptions" to the collateral estoppel doctrine provide justification for this Court to disregard the prior decisions of the Wyoming District Court and the Wyoming Supreme Court in this case.

[5] Ultra, as operator, is the party charged with compiling the revenue and expense data, calculating whether an NPI is due, and then allocating that obligation between the parties. Yet, rather than substantiate its claim that the Proportionate Revenue Method is "absurd" by running the calculation of the existing consolidated data uniquely in

amend or change it.

## II.
## CONCLUSION

12. The plain language of the Supplemental Accounting Agreement requires that the NPI burden be allocated based on the Proportionate Revenue Method. Moreover, the four-part Wyoming collateral estoppel test is satisfied, which prohibits re-litigation of the SAA allocation question. For these reasons, as set forth more fully in the SCPPA/TID Motion and Response, the Plaintiffs respectfully request that the Court grant the SCPPA/TID Motion, deny the Ultra and Pinedale Motions, and grant such other relief to SCPPA/TID as is just and appropriate under prevailing law and equity.

[*Remainder of Page Intentionally Left Blank*]

---

its control, Ultra makes conclusory statements and relies on an extreme hypothetical (in addition to mangling SCPPA/TID's actual interpretation of the SAA). Ultra's strategy is not accidental. Were it to "do the math," the result would yield an allocation system that is in line with the interest being paid, particularly when aggregated over time. Most assuredly, SCPPA and TID live in no fear of being "hoisted on their own interpretive petard" by prevailing in this matter. *See* Ultra Response at ¶ 16.

DATED: July 26, 2019.                           Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ John D. Cornwell*
John D. Cornwell
Texas Bar No. 24050450
Federal ID No. 610439
700 Milam Street, Suite 2700
Houston, TX 77002-2806
Telephone: 713.222.1470
Facsimile: 713.222.1475
jcornwell@munsch.com

*Counsel for Southern California Public Power Authority and Turlock Irrigation District*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 26th day of July, 2019, a true and correct copy of the foregoing Reply was served electronically through the Court's ECF transmission facilities on all parties registered to receive ECF notice in this case.

By: */s/ John D. Cornwell*
John D. Cornwell
Texas Bar No. 24050450

7