# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SOUTHERN CALIFORNIA PUBLIC POWER AUTHORITY, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | |
| ULTRA RESOURCES, INC., | § | Civil Action No. 4:19-cv-00090 |
| Defendant/Counter-Claimant, | § § | Hon. Vanessa D. Gilmore |
| v. | § § § | |
| SOUTHERN CALIFORNIA PUBLIC POWER AUTHORITY, *et al.*, | § § § | |
| Counter-Defendants. | § § § | |
| GRIZZLY OPERATING, LLC f/k/a VANGUARD NATURAL RESOURCES, LLC, | § § § § | |
| Reorganized Debtor, | § § | |
| v. | § § § | |
| ULTRA RESOURCES, INC., | § § | |
| Claimant. | § | |

## ANADARKO E&P ONSHORE LLC'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, FOR ABSTENTION, OR FOR JUDGMENT ON THE PLEADINGS[1]

---

[1] Originally filed on June 28, 2018 in Adv. No. 17-3044, at Dkt. No. 99.

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND ........................................................................................................ 3

III. LEGAL STANDARD ................................................................................................. 6

IV.  ARGUMENT .............................................................................................................. 7

    A.  The Court should dismiss because it lacks subject matter jurisdiction over Ultra's counterclaim against Anadarko.................................................................................... 7

    B.  Even if the Court has subject matter jurisdiction, it should abstain from exercising that jurisdiction here. ................................................................................................... 11

    C.  Even if the Court does not dismiss for lack of subject matter jurisdiction or abstain, it should grant judgment on the pleadings in favor of Anadarko........................................ 15

        i.   Ultra is a reorganized debtor and cannot bring a "turnover" action. .......................... 15

        ii.  Ultra's own pleading establishes that this is not a turnover action............................. 16

V.   CONCLUSION........................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Actrade Liquidation Tr. v. Greenwich Ins. Co. (In re Actrade Fin. Techs., LTD.)*,
No. 02-16212 ALG, 2010 WL 3386945 (Bankr. S.D.N.Y. Aug. 23, 2010)..........................13

*B.D.W. Assocs. v. Busy Beaver Bldg. Ctrs.*,
865 F.2d 65 (3d Cir. 1989)......................................................................................................16

*Barbee v. Colonial Healthcare Ctr., Inc.*,
No. Civ.A 3:03-CV-1658N, 2004 WL 609394 (N.D. Tex. Mar. 22, 2004) .....................12, 14

*In re Busick*,
831 F.2d 745 (7th Cir. 1987) ..................................................................................................16

*Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*,
309 B.R. 217 (Bankr. N.D. Tex. 2004)....................................................................................13

*Connolly v. City of Houston (In re W. Integrated Networks, LLC)*,
329 B.R. 334 (Bankr. D. Colo. 2005) ......................................................................................15

*In re Craig's Stores of Tex., Inc.*,
266 F.3d 388 (5th Cir. 2001) ........................................................................................ *passim*

*Den Norske Stats Oljeselskap As v. HeereMac Vof*,
241 F.3d 420 (5th Cir. 2001) ....................................................................................................6

*DHP Holdings II Corp. v. Home Depot, Inc. (In re DHP Holdings II Corp.)*,
435 B.R. 264 (Bankr. D. Del. 2010) ........................................................................................17

*In re Enron Corp. Sec., Derivatives & ERISA Litig.*,
No. G-05-0012, 2005 WL 1745471 (S.D. Tex. July 25, 2005) .............................................7, 9

*Flores v. Baldwin*,
No. 3:01-CV-2873-P, 2002 WL 1118504 (N.D. Tex. May 28, 2002)......................................12

*Gilbane Bldg. Co. v. Air Sys., Inc. (In re Encompass Servs. Corp.)*,
No. H-06-CV-0392, 2006 WL 1207743 (S.D. Tex. May 3, 2006)...........................................11

*Giuliano v. Fairfield Grp. Health Care Ctrs. Ltd. P'ship (In re Lexington Healthcare Grp., Inc.)*,
363 B.R. 713 (Bankr. D. Del. 2007) ........................................................................................17

*In re Johnson*,
215 B.R. 381 (Bankr. N.D. Ill. 1997) ......................................................................................16

*Minnesota v. Hitchcock*,
   185 U.S. 373 (1902)...........................................................................................................6

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & ERISA Litig.)*,
   535 F.3d 325 (5th Cir. 2008) ..........................................................................................8

*Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*,
   335 B.R. 66 (Bankr. S.D.N.Y. 2005)...........................................................7, 8, 15

*Pettibone Corp. v. Easley*,
   935 F.2d 120 (7th Cir. 1991) ..........................................................................................11

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ..........................................................................................6

*In re Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (Republic
   Reader's Serv., Inc.)*,
   81 B.R. 422 (Bankr. S.D. Tex. 1987) ...................................................................12, 14

*Richmond Tank Car Co. v. CTC Invs. (In re Richmond Tank Car Co.)*,
   119 B.R. 124 (S.D. Tex. 1989) .............................................................................12, 14

*Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)*,
   272 B.R. 74 (Bankr. S.D.N.Y. 2002).......................................................................15

*Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*,
   778 F.3d 502 (5th Cir. 2015) ..........................................................................................6

*Talsma v. Wells Fargo Bank, N.A. (In re Talsma)*,
   509 B.R. 535 (Bankr. N.D. Tex. 2014)......................................................................10

*Tow v. HBK Main St. Invs., L.P. (In re ATP Oil & Gas Corp.)*,
   No. 12-36187, 2015 WL 1093568 (Bankr. S.D. Tex. Mar. 11, 2015)................................7, 16

*In re U.S. Brass Corp.*,
   301 F.3d 296 (5th Cir. 2002) .....................................................................................9, 10

*U.S. Tr. v. Gryphon at the Stone Mansion, Inc.*,
   216 B.R. 764 (W.D. Pa. 1997), *aff'd*, 166 F.3d 552 (3d Cir. 1999) ........................................10

*Ultra Res., Inc. v. Hartman*,
   226 P.3d 889 (Wyo. 2010)...........................................................................................4

*United States v. Inslaw, Inc.*,
   932 F.2d 1467 (D.C. Cir. 1991)....................................................................................16

*Van Duzer v. U.S. Bank Nat'l Ass'n*,
   995 F. Supp. 2d 673 (S.D. Tex.), *aff'd*, 582 F. App'x 279 (5th Cir. 2014) ............................6, 7

iii

*In re VeraSun Energy Corp.*,
    No. 08-12606 (BLS), 2013 WL 3336870 (Bankr. D. Del. June 28, 2013)...................7, 16, 17

**Statutes**

11 U.S.C. § 541 ....................................................................................................................5

11 U.S.C. § 542 ............................................................................................. *passim*

28 U.S.C. § 157 ..................................................................................................................10

28 U.S.C. § 1334 ........................................................................................... *passim*

**Other Authorities**

8 Collier on Bankruptcy § 1142.04 (15th ed. rev.) ........................................................10

FED. R. BANKR. P. 7012 ..............................................................................................1, 6

FED. R. CIV. P. 12 ......................................................................................................1, 3, 6

Pursuant to Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(1), Counter-Defendant Anadarko Petroleum E&P Onshore LLC ("Anadarko") moves to dismiss Counter-Complainant Ultra Resources, Inc.'s ("Ultra") *Counterclaim and Fed. R. Civ. P. 20 Joinder of Counter-Defendants* (Adv. D.E. 12) (the "Counterclaim") for lack of subject matter jurisdiction.  In the alternative, Anadarko requests that the Court either abstain under 28 U.S.C. § 1334(c) from hearing Ultra's Counterclaim or grant judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

## I.      INTRODUCTION

1.      This adversary proceeding involves a dispute relating to the apportionment of liability among various working interest owners for payment of a net profit interest (the "NPI") that burdens certain oil and gas leases operated by Ultra in Sublette County, Wyoming (the "Pinedale Field").  Plaintiffs (defined herein) are two working interest owners in the Pinedale Field, and they commenced this adversary proceeding prior to this Court's confirmation of the *Second Amended Joint Chapter 11 Plan of Reorganization* (Bankr. D.E. 1324) (the "Plan") in Ultra and its affiliates' chapter 11 cases.[1]  Plaintiffs allege that Ultra, as lease operator, overcharged them under the terms of an agreement apportioning liability for the NPI (as further defined herein, the "SAA") and seek declaratory relief regarding the apportionment of that liability, an accounting, and a refund or turnover in the amount allegedly overcharged.

2.      Anadarko is a former working interest owner in the Pinedale Field and was subject to the terms of the SAA.  Unlike Plaintiffs, however, Anadarko did not commence any adversary proceeding regarding the SAA, did not seek to intervene in this adversary proceeding, did not file a proof of claim, and did not participate in the chapter 11 cases.  Nonetheless, Ultra now attempts

---

[1]      Capitalized terms that are not otherwise defined herein have the meanings set forth in the Plan.

1

to force Anadarko to defend itself in this Court by filing an alleged "turnover" action *after* confirmation and consummation of the Plan.

3.      This Court does not have subject matter jurisdiction over Ultra's Counterclaim against Anadarko.  Post-confirmation jurisdiction in the Fifth Circuit is very narrow and exists only for matters pertaining to the implementation or execution of a plan.  Ultra's Counterclaim against Anadarko relates to neither.  Although dubbed a "turnover" action in order to suggest "arising under" jurisdiction, the Counterclaim is nothing more than a breach of contract claim relating to the proper interpretation of the SAA, which is controlled by Wyoming state law. Neither the Plan nor bankruptcy law will play any role in the adjudication of this dispute. Moreover, its result will not affect the estate—which ceased to exist upon confirmation of the Plan—or impact creditors' recoveries, as creditors already have been paid in full and their recoveries are not contingent on any litigation proceeds.  Ultra's Counterclaim was brought solely for its own benefit, does not belong in the Bankruptcy Court, and should be dismissed.

4.      If the Court determines that subject matter jurisdiction exists, the Court should nonetheless abstain from exercising that jurisdiction.  Subject matter jurisdiction, to the extent it exists at all, would be based solely on "related to" jurisdiction.  Ultra's state law dispute over the interpretation of the SAA does not arise in or arise under 28 U.S.C. § 1334(b) despite Ultra's "turnover" label.   Absent jurisdiction under 28 U.S.C. § 1334, Ultra's Counterclaim cannot proceed in federal court, as it raises no federal question, and Ultra and Anadarko are not diverse. Instead, Ultra's Counterclaim rests purely on a state law contract interpretation that has been finally adjudicated by the Wyoming Supreme Court.  Furthermore, abstaining from exercising jurisdiction will not prejudice the administration of Ultra's bankruptcy estate because that estate

no longer exists and creditor recoveries do not depend on the outcome of this case.  Accordingly, it is a prime case for abstention.

5.       Finally, should the Court conclude that it has jurisdiction and choose to exercise it, Anadarko moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) because Ultra's "turnover" action fails as pleaded.  A turnover action must be brought for the benefit of the estate, and only to recover a matured, undisputed debt.  Again, as Ultra brought this "turnover" action post-confirmation, there is no "estate" to turn the debt over to or that can benefit from it.  And as Ultra admits in its Counterclaim, a dispute and controversy exists regarding the proper methodology for apportionment under the SAA.  It is well-settled law that a debtor cannot bring a turnover action under Bankruptcy Code § 542 when a bona fide dispute exists. Accordingly, if the Court finds it has jurisdiction and chooses to exercise it, judgment on the pleadings is proper in this case.

## II.       BACKGROUND

6.       Debtor Ultra Petroleum Corp. and seven of its subsidiary companies, including Ultra (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on April 29, 2016.[2]  Bankr. D.E. 1.  Anadarko did not file a proof of claim in these chapter 11 cases.

7.       On March 14, 2017, the Court confirmed the Debtors' Plan, which was then consummated on April 12, 2017.  *See Chapter 11 Post-Confirmation Report for Quarter Ending Mar. 2018* (Bankr. D.E. 1713) (indicating that the order confirming the Plan has become final, that

---

[2]       The seven subsidiary Debtors are (1) Keystone Gas Gathering, LLC, (2) Ultra Resources, Inc., (3) Ultra Wyoming, Inc., (4) Ultra Wyoming LGS, LLC, (5) UP Energy Corporation, (6) UPL Pinedale, LLC, and (7) UPL Three Rivers Holdings, LLC.

3

payments are being made as required by the Plan, and that the reorganized debtor assumed the business or management of the property treated under the Plan on April 12, 2017).

8.      Southern California Power Authority and Turlock Irrigation District ("Plaintiffs") commenced this adversary proceeding against Ultra on February 9, 2017, prior to confirmation of the Plan.  *See* Compl. (Adv. D.E. 1).  Plaintiffs are working interest owners in the Pinedale Field, and Ultra is the operator.  *Id.* ¶ 1.

9.      The Pinedale Field is subject to that certain Pinedale Unit Area Net Profits Contract dated April 1, 1954 (the "NPC"), whereby working interest owners, through operator Ultra, must make NPI payments to Doyle and Margaret Hartman and other successors in interest (collectively, the "NPI Owners").  *Id.* ¶ 2.  This NPI liability is then apportioned among working interest owners under that certain Supplemental Accounting Agreement, Net Profits Interest, Pinedale Unit Area, Sublette County, Wyoming (the "SAA").  *Id.* ¶ 3; *see also* Ex. B to Compl. (Adv. D.E. 1-2).

10.     In prior litigation brought by NPI Owners, a Wyoming state district court interpreted the SAA under Wyoming law and concluded that the NPI liability owed by each working interest owner (each, an "NPI Allocation") must be calculated by dividing that working interest owner's respective gross revenue by the total gross revenue attributable to the Pinedale Field.  Ex. C to Compl. (Adv. D.E. 1-3), *Ultra Res., Inc. v. Hartman*, 226 P.3d 889 (Wyo. 2010) (the "Hartman Opinion"); *see also* Compl. ¶ 22 & n.8 (noting that the SAA requires calculation of NPI Allocations based on each working interest owner's "gross revenue," as defined by the NPC).  On appeal, the Wyoming Supreme Court affirmed, holding that the SAA requires calculation of NPI Allocations based on revenues, not profits.  *See* Hartman Op. at 935 ("While we agree that the [NPC] focuses on net profits . . . the [SAA] allocates on the basis of revenue."); *see also* Pls.'

Mot. for Summ. J. (Adv. D.E. 51) ¶¶ 39–64 (summarizing the Wyoming litigation and Hartman Opinion, and arguing that Ultra's Counterclaim is barred by collateral estoppel).

11.     Plaintiffs allege that since May 2014, Ultra has invoiced and Plaintiffs have overpaid their NPI Allocations.   Compl. ¶ 4.   Plaintiffs contend that, despite the Wyoming Supreme Court's ruling that the SAA requires apportionment of NPI liability based on each working interest owner's gross revenue, Ultra has been wrongfully calculating their NPI Allocations based on their respective net profits.  *Id.* ¶ 5.[3]  Because of Ultra's erroneous calculation of the NPI Allocations, Plaintiffs allege that they overpaid Ultra no less than $2.1 million and seek, *inter alia*, an accounting and refund of the overpayments.  *Id.* ¶¶ 57, 59, 61–68.

12.     Anadarko was joined in this adversary proceeding when Ultra filed its Counterclaim on May 16, 2017, after confirmation and substantial consummation of the Plan. Anadarko was a working interest owner in the Pinedale Field until October 1, 2013, when it assigned those interests to Encore Energy Partners (now Vanguard Natural Resources, LLC). Anadarko's Am. Answer to Countercl. (Adv. D.E. 44) ¶ 6.   Ultra alleges that Anadarko owes $1,174,656.97 in NPI Allocations and seeks declaratory judgment to that effect as well as asserting a putative turnover claim under 11 U.S.C. § 541.   Countercl. ¶ 40.   Anadarko denies that it owes Ultra any payments under the SAA, Anadarko's Am. Answer to Countercl. ¶ 40, and has asserted, *inter alia*, the affirmative defense of setoff, *id.* at p. 9, ¶ 8.

13.     Article XI of the Plan purports to provide that the Court "shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant

---

[3]     As more specifically explained in the Complaint, Ultra receives a much larger share of gross revenue (*i.e.*, approximately 83%) than its apparent share of net profits (*i.e.*, approximately 50%).  *Id.* ¶ 43 n.16.  Thus, under the allocation method that Ultra advocates, it is responsible for a much smaller percentage of the total liability to the NPI Owners.  The exact opposite is true for the working interest owners such as Plaintiffs.  *See id.* (noting that Plaintiffs together receive less than 3% of gross revenue, but that Ultra has demanded that they pay approximately 20% of the NPI liability).

to sections 105(a) and 1142 of the Bankruptcy Code," Plan Art. XI, including jurisdiction to "hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases," *id.* Art XI.10.

## III.   LEGAL STANDARD

14.     Federal Rules of Civil Procedure 12(b)–(i) apply in adversary proceedings. FED. R. BANKR. P. 7012(b).  Under Rule 12(b)(1), a party may assert the defense of lack of subject matter jurisdiction by motion at any time.  FED. R. CIV. P. 12(b)(1).[4]  This defense cannot be waived, nor can parties consent to subject matter jurisdiction.  *Minnesota v. Hitchcock*, 185 U.S. 373, 381 (1902) ("Consent may waive an objection so far as respects the person, but it cannot invest a court with a jurisdiction which it does not by law possess over the subject-matter.").  When considering a factual attack on subject matter jurisdiction, the Court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).[5]  The party asserting jurisdiction bears the burden of proof.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Furthermore, where the Court has subject matter jurisdiction under 28 U.S.C. § 1334, it may nonetheless "abstain[] from hearing a particular proceeding" either "in the interest of justice, or in the interest of comity with State courts or respect for State law."  28 U.S.C. § 1334(c)(1).

15.     "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss for failure to state a claim."  *Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673,

---

[4]     As previously shared with the Court, Anadarko has held off filing this motion until now to minimize litigation costs and preserve judicial resources because the parties have been attempting for several months to consensually resolve their disputes.

[5]     This motion constitutes a factual attack because Anadarko's argument relies on the record of the Debtors' chapter 11 cases, including the confirmation and consummation of the Plan. *See Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

683 (S.D. Tex.), *aff'd*, 582 F. App'x 279 (5th Cir. 2014).  Thus, it should be granted "if there is no issue of material fact and if the pleadings show that the moving party is entitled to judgment as a matter of law."  *Id.*

## IV.   ARGUMENT

**A.   The Court should dismiss because it lacks subject matter jurisdiction over Ultra's counterclaim against Anadarko.**

16.   This Court confirmed the Debtors' Plan on March 14, 2017, with an effective date of April 12, 2017.  Bankr. D.E. 1324, 1423.  That was one month *before* Ultra filed its "turnover" action against Anadarko.[6]  *See* Countercl.  As demonstrated below, this Court does not have subject matter jurisdiction over Ultra's claim against Anadarko.

17.   Courts generally recognize that a Bankruptcy Court's subject matter jurisdiction "shrinks" once a plan is confirmed.  *See In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir. 2001); *Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005) ("[A]ll courts that have addressed the question have ruled that once confirmation occurs, the bankruptcy court's jurisdiction shrinks.").  "[T]he Fifth Circuit interprets the scope of post-confirmation jurisdiction very narrowly."  *In re Enron Corp. Sec., Derivatives & ERISA Litig.*, No. G-05-0012, 2005 WL 1745471, at *4 (S.D. Tex. July 25, 2005).  Specifically, the Fifth Circuit made clear in *Craig's Stores* that upon confirmation of a plan, "the debtor's estate, and thus the bankruptcy jurisdiction, ceases to exist other than for matters pertaining to the implementation or execution of the plan."  266 F.3d at 390.  The court in *Craig's Stores* further

---

[6]      While Ultra styles its Counterclaim as an action for "turnover of property to the estate" under Bankruptcy Code § 542, Countercl. ¶ 43, "merely labeling a claim as a turnover action is not sufficient to demonstrate the Court's jurisdiction over this proceeding."  *In re VeraSun Energy Corp.*, No. 08-12606 (BLS), 2013 WL 3336870, at *4 (Bankr. D. Del. June 28, 2013).  As discussed in more detail below, Ultra has not properly invoked section 542(b) because there is a genuine dispute over whether Anadarko owes Ultra any NPI payments.  *Tow v. HBK Main St. Invs., L.P. (In re ATP Oil & Gas Corp.)*, No. 12-36187, 2015 WL 1093568, at *3 (Bankr. S.D. Tex. Mar. 11, 2015) (Isgur, J.) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute.").

noted that three specific factors were "critical" to its determination that the bankruptcy court lacked jurisdiction over the post-confirmation adversary proceeding before it:  first, the claims at issue had "principally dealt with post-confirmation relations between the parties"; second, "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization"; and third, "no facts or law deriving from the reorganization or the plan [were] necessary to the claim." *Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & ERISA Litig.)*, 535 F.3d 325, 335 (5th Cir. 2008) (quoting *Craig's Stores*, 266 F.3d at 391) (internal quotation marks omitted).

18.     Ultra's claims against Anadarko—which seek recovery of money for reorganized Ultra's sole benefit pursuant to a contract governed by state law—will have no bearing on "the implementation or execution" of the Plan.  Under the Plan, Ultra retained its non-waived causes of action exclusively for its benefit, and not that of ***any creditors***.  Plan, Art. 4.18 ("The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.").  Indeed, the Plan states that all creditors will be paid in full and their recoveries are not contingent on any litigation proceeds.  Plan, Art. III.2.  But even if Ultra's suit could affect the recovery of creditors, this Court would still not have subject matter jurisdiction, because "[a] bankruptcy court cannot hear a post-confirmation dispute simply because it might conceivably increase the recovery to creditors."  *Gen. Media*, 335 B.R. at 75; *see also Craig's Stores*, 266 F.3d at 391 ("Finally, while Craig's insists that the status of its contract with the Bank will affect its distribution to creditors under the plan, the same could be said of any other post-confirmation contractual relations in which Craig's is engaged.").

19.     Moreover, two of the three considerations cited in *Craig's Stores* weigh heavily against subject matter jurisdiction in this case.  Because Ultra brought its Counterclaim after the Plan was confirmed, and Anadarko was not otherwise involved in Ultra's chapter 11 proceedings,

"[t]here was no antagonism or claim pending between the parties as of the date of the reorganization." *Craig's Stores*, 266 F.3d at 391. Additionally, resolving Ultra's post-confirmation claim will not require any "facts or law deriving from the reorganization or the [P]lan." *Id.* All these facts compel the conclusion that the Court lacks subject matter jurisdiction over Ultra's claims under binding Fifth Circuit precedent.

20.    While the conduct giving rise to Ultra's claim occurred pre-petition, and thus all three *Craig's Stores* considerations are not present, courts considering similar fact patterns have found they lacked subject matter jurisdiction. The *Enron* decision from this district is particularly instructive. *See* 2005 WL 1745471. There, the plaintiffs brought suit in state court for violations of the Texas Securities Act and fraud, and the defendants removed to the Southern District of Texas. *Id.* at *1–2. The plaintiffs moved to remand, arguing that the court lacked subject matter jurisdiction, and the court agreed. *Id.* at *4. There, as here, the "suit arose before confirmation, indeed pre-petition," but the claims "were not asserted until after confirmation." *Id.* at *6. Additionally, because the plan in *Enron* had been confirmed and substantially consummated, the court recognized that "the bankruptcy estate no longer exists and Plaintiffs' claims cannot have any impact on that estate unless the reorganization plan expressly provides for continuing jurisdiction." *Id.* at *7. Similarly, here, any recovery by Ultra will not affect the estate or any creditors—the suit is only for the benefit of the reorganized debtor.

21.    The fact that the Plan has already been substantially consummated further underscores the conclusion that this Court lacks subject matter jurisdiction, as it shows that the "implementation" of the Plan is already substantially complete. *See supra* ¶ 7. But even setting this fact aside, jurisdiction cannot exist here because *nothing* about the Plan is implicated by Ultra's Counterclaim against Anadarko. This is in direct contrast to cases like *In re U.S. Brass Corp.*, 301

9

F.3d 296 (5th Cir. 2002), where the dispute centered on whether a proposal to liquidate a claim through binding arbitration violated a requirement ***in the plan*** that the case be resolved by a court. *Id.* at 305 ("Bankruptcy law will ultimately determine this dispute, and the outcome could affect the parties' post-confirmation rights and responsibilities.   Furthermore, this proceeding will certainly impact compliance with or completion of the reorganization plan."); *see also Talsma v. Wells Fargo Bank, N.A. (In re Talsma)*, 509 B.R. 535, 548 (Bankr. N.D. Tex. 2014) ("Because the disposition of Counts 1 and 6 will rely heavily on interpreting events of default under the Plan and Plan Documents, the third *Craig's Stores* factor—as in *U.S. Brass*—outweighs the first and second factors to favor jurisdiction.").

22.     While Article XI of the Plan purports to preserve this Court's jurisdiction over several different matters without regard to confirmation or consummation of the Plan,[7] this provision cannot confer subject matter jurisdiction that does not otherwise exist under 28 U.S.C. § 1334 and binding Fifth Circuit case law.  *See U.S. Brass Corp.*, 301 F.3d at 303 (explaining that "the source of the bankruptcy court's [post-confirmation] subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan," but rather 28 U.S.C. §§ 1334 and 157 (quoting *U.S. Tr. v. Gryphon at the Stone Mansion, Inc.*, 216 B.R. 764, 769 (W.D. Pa. 1997), *aff'd*, 166 F.3d 552 (3d Cir. 1999))); 8 Collier on Bankruptcy § 1142.04, at 1142–47 (15th ed. rev.) ("[N]either section 1142 nor the terms of a plan confer jurisdiction upon a bankruptcy court. Bankruptcy jurisdiction is governed by 28 U.S.C. 1334.").

---

[7]     Specifically, Article XI references "matters related to Executory Contracts or Unexpired Leases, including . . . any potential contractual obligation under any Executory Lease or Unexpired Contract that is assumed," Plan, Art. XI.3; "adversary proceedings . . . that may be pending on the Effective Date," *id.* Art. XI.5; and "any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases," *id.* Art. XI.10.

23.     This case encapsulates the rationale behind the narrow view of post-confirmation jurisdiction.  Ultra has exited bankruptcy as a reorganized entity that can bring its grievances in the proper state forum without help or protection from the bankruptcy court.  "It may not come running to the bankruptcy judge every time something unpleasant happens."  *Craig's Stores*, 266 F.3d at 390 (quoting *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991)); *see also id.* ("A firm that has emerged from bankruptcy is just like any other defendant in a tort case: it must protect its interests in the way provided by the applicable non-bankruptcy law . . . .").  Ultra's claims arose pre-petition, have no relation to bankruptcy law or the terms of the Plan, and will not affect any entity other than the reorganized Ultra and non-claimant Anadarko.  Accordingly, this Court lacks subject matter jurisdiction to consider Ultra's post-confirmation suit and should grant Anadarko's motion to dismiss.  *Gilbane Bldg. Co. v. Air Sys., Inc. (In re Encompass Servs. Corp.)*, No. H-06-CV-0392, 2006 WL 1207743, at *3 (S.D. Tex. May 3, 2006) (affirming the bankruptcy court's holding that it lacked jurisdiction where "[t]he claims raised in the adversary proceeding [did] not affect the execution or implementation of the confirmed plan" and could not "impact the bankruptcy estate because there [was] no estate left to administer").

**B.     Even if the Court has subject matter jurisdiction, it should abstain from exercising that jurisdiction here.**

24.     Even if the Court finds it has subject matter jurisdiction, Anadarko requests that the Court abstain from exercising it.  Section 1334(c)(1) provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  Ultra's claims against Anadarko revolve around a contract interpretation that runs directly contrary to a final determination by the Wyoming Supreme Court. *See generally* Hartman Op.  Despite being collaterally estopped from doing so, Ultra is now asking

11

this *federal Bankruptcy Court* to effectively overrule a ruling of that state's highest court.  Out of

respect for state law and in the interest of comity, this Court should decline to do so.

25.     Courts in this District generally consider 12 factors in determining whether to

abstain:

> (1) the administrative effect on the estate in the event of a
> bankruptcy court recommendation of abstention; (2) the extent to
> which state law issues predominate over bankruptcy issues; (3) the
> difficulty or unsettled nature of applicable state law; (4) the
> existence of any related proceedings; (5) the jurisdictional basis, if
> any, other than 28 U.S.C. § 1334; (6) the degree of relatedness of
> the proceeding to the main bankruptcy case; (7) the substance rather
> than the form of an asserted core proceeding; (8) the feasibility of
> state claim severance from core bankruptcy matters; (9) the present
> docket burden in the Bankruptcy Court; (10) the likelihood of forum
> shopping by one party; (11) the existence of the right to a jury trial
> by either party; and (12) the presence of nondebtor parties in the
> proceeding.

*Richmond Tank Car Co. v. CTC Invs. (In re Richmond Tank Car Co.)*, 119 B.R. 124, 126 (S.D.

Tex. 1989).  The Court need not address all factors, and permissive abstention may be warranted

even though some of the factors are absent.  *Barbee v. Colonial Healthcare Ctr., Inc.*, No. Civ.A

3:03-CV-1658N, 2004 WL 609394, at *2 (N.D. Tex. Mar. 22, 2004) (citing *Flores v. Baldwin*,

No. 3:01-CV-2873-P, 2002 WL 1118504, at *6–7 (N.D. Tex. May 28, 2002)).

26.     Because of the nature of this action and its post-confirmation filing, ***ten of the***

***twelve*** permissive abstention factors listed above favor abstention.   Ultra's claim is a post-

confirmation breach of contract action disguised as a "turnover" proceeding.  But the "substance

rather than the form" of this action (factor seven) is a disputed breach of contract claim.  *In re*

*Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (Republic Reader's Serv., Inc.)*, 81

B.R. 422, 427 (Bankr. S.D. Tex. 1987) ("Often a proceeding, cast in the language of a core

proceeding, merely shrouds state law actions under the guise of a bankruptcy issue.  A typical

example is an adversary proceeding commenced as an action for turnover of property under 11 U.S.C. § 542.").  Indeed, as discussed above, there is no "estate" to turn property over to, and as discussed more fully below, Anadarko disputes the alleged debt in question.  Thus, Ultra's Counterclaim cannot be a "turnover" action.  There is also no "jurisdictional basis" (factor five) for this breach of contract action other than 28 U.S.C. § 1334.  Ultra's claims raise no federal questions, and there is no diversity of citizenship between Ultra and Anadarko.  Countercl. ¶¶ 1, 6 (alleging that both Ultra and Anadarko are Delaware entities).

27.    Compounding the lack of any jurisdictional basis is the fact that the state law issues raised by Ultra's Counterclaim will not only "predominate over bankruptcy issues" (factor two)— they are the *only* issues.  *See Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004) ("[S]tate law issues do not merely predominate; they overwhelm.  This is an action seeking damages for pre-petition breaches of pre-petition contracts and for pre-petition tortious conduct, and it is a non-core proceeding which neither arises in nor under title 11.").  Moreover, the Wyoming Supreme Court already ruled on the state law questions raised by Ultra's claims, and collateral estoppel bars Ultra from relitigating them.  *See generally* Pls.' Mot. for Summ. J.  This makes the state law issues more complex and difficult (factor three), further supporting abstention.  And even if the legal questions are reviewed again and resolved in Ultra's favor, Anadarko still has a right to a jury trial on its affirmative defense of setoff (factor eleven).  Anadarko's Am. Answer to Countercl. at p. 9, ¶ 8; *see also Actrade Liquidation Tr. v. Greenwich Ins. Co. (In re Actrade Fin. Techs., LTD.)*, No. 02-16212 ALG, 2010 WL 3386945, at *5 (Bankr. S.D.N.Y. Aug. 23, 2010) ("[W]hen a setoff is raised only as an affirmative defense seeking to reduce, or extinguish, the original claim, the party asserting the claim does not invoke the bankruptcy court's equitable jurisdiction and retains the right to a jury trial.").

28.     Furthermore, this post-confirmation action will have no "administrative effect on the estate" (factor one) because there is no "estate" to administer after confirmation and consummation of the Plan. *Craig's Stores*, 266 F.3d at 390 ("No longer is expansive bankruptcy court jurisdiction required to facilitate 'administration' of the debtor's estate, for there is no estate left to reorganize."). For the same reasons, this proceeding concerns only "nondebtor parties" (factor twelve) because there is no longer a "debtor," but only a reorganized debtor. *Id.* There is also no "degree of relatedness" to the main bankruptcy case (factor six), which now concerns only the implementation or execution of the plan, and thus Ultra's action can be easily severed (factor eight). *Richmond Tank Car Co.*, 119 B.R. at 127 ("The issues in this adversary are readily severable from the main bankruptcy herein. It is a dispute over the terms of a written contract.").

29.     Finally, this case, like most adversary proceedings, will strain precious judicial resources (factor nine). *Republic Reader's Serv.*, 81 B.R. at 428 ("Adversary proceedings, such as the one involved here, require an enormous expenditure of scarce judicial resources."). The Court's resources are better spent resolving issues involving actual debtors, estates, and bankruptcy issues, rather than post-confirmation breach of contract claims brought by a reorganized entity. Accordingly, Anadarko requests that the Court abstain from this suit. *See Barbee*, 2004 WL 609394, at *2 (affirming the bankruptcy court's decision to abstain when the "[a]ppellants' cross-claim was a state law matter between two non-debtors, the resolution of which would not impact the bankruptcy estate and would be better accomplished in a Missouri proceeding").

**C.     Even if the Court does not dismiss for lack of subject matter jurisdiction or abstain, it should grant judgment on the pleadings in favor of Anadarko.**

> *i.     Ultra is a reorganized debtor and cannot bring a "turnover" action.*

30.     In addition to lacking subject matter jurisdiction, Ultra's "turnover" action fails at its foundation.  A turnover action can only be brought against "an entity that owes a debt ***that is property of the estate*** and that is matured, payable on demand, or payable on order" and must be paid "to, or on the order of, the trustee."  11 U.S.C. § 542(b) (emphasis added).

31.     As discussed above, there is no "estate" for Anadarko to owe money because the Plan was already confirmed and consummated.  *See Craig's Stores*, 266 F.3d at 390.  Likewise, there is no "trustee" or debtor in possession to be paid the debt.  *Gen. Media, Inc.*, 335 B.R. at 75–76 ("Once confirmation occurs, there is no longer a trustee (*i.e.*, the debtor in possession) to whom property can be delivered, or an estate that can benefit."); *see also Connolly v. City of Houston (In re W. Integrated Networks, LLC)*, 329 B.R. 334, 340–42 (Bankr. D. Colo. 2005) ("[T]he Court finds the confirmation of the plan, not the closing of the case, to be the operative event for § 542 'during the case' analysis."); *Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)*, 272 B.R. 74, 97–98 (Bankr. S.D.N.Y. 2002) ("Since there is no estate and no trustee after confirmation, there can be no turnover.").

32.     Accordingly, Ultra—a reorganized entity that has exited bankruptcy—cannot bring a turnover action.  *Gen. Media*, 335 B.R. at 75–76 ("[A] turnover proceeding under § 542 will not lie following confirmation."); *Rickel & Assocs.*, 272 B.R. at 97–98 ("Since there is no estate and no trustee after confirmation, there can be no turnover.").  Judgment on the pleadings is therefore appropriate.

### ii.    *Ultra's own pleading establishes that this is not a turnover action.*

33.    Even if a turnover action could be brought post-confirmation, Ultra's own pleading establishes that this is not one.  Numerous courts have recognized that turnover actions cannot be used to seek recovery of property when there "is a bona fide dispute of the claim." *VeraSun Energy Corp. v. W. Plains Co. (In re VeraSun Energy Corp.)*, No. 08-12606 (BLS), 2013 WL 3336870, at *4 (Bankr. D. Del. June 28, 2013); *see also In re Johnson*, 215 B.R. 381, 386 (Bankr. N.D. Ill. 1997) ("Turnover is not intended as a remedy to determine disputed rights of the parties to property." (internal citation omitted)); *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991) ("It is settled law that turnover actions under § 542 cannot be used to demand assets whose title is in dispute." (internal quotations omitted)).  As this Court has stated, "the function of § 542 is to return possessory rights in property to the trustee," and § 542 is "used to recover possession, not title." *Tow v. HBK Main St. Invs., L.P. (In re ATP Oil & Gas Corp.)*, No. 12-36187, 2015 WL 1093568, at *3 (Bankr. S.D. Tex. Mar. 11, 2015) (Isgur, J.).  Thus, "Section 542 is inapplicable when there is a title dispute between the parties." *Id.*

34.    Here, a bona fide dispute exists because there is "a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as the application of law to undisputed facts." *B.D.W. Assocs. v. Busy Beaver Bldg. Ctrs.*, 865 F.2d 65, 66 (3d Cir. 1989) (adopting the Seventh Circuit's standard from *In re Busick*, 831 F.2d 745, 746 (7th Cir. 1987)).  Specifically, Anadarko disputes Ultra's erroneous legal argument misinterpreting the SAA— which the Wyoming Supreme Court has already rejected—and denies that Anadarko is "delinquent in [its] NPI obligations."  Anadarko's Am. Answer to Countercl. ¶¶ 34, 40.  The Counterclaim even concedes as much, as Ultra alleges that "[a]n actual and present dispute and controversy exists" regarding the "allocation of the NPI liability among the working interest owners."

16

Countercl. ¶ 35.  This alone is sufficient to bar a turnover action.  *VeraSun*, 2013 WL 3336870, at

*4 ("West Plains' denial of liability is sufficient to render the debt disputed."); *Giuliano v.*

*Fairfield Grp. Health Care Ctrs. Ltd. P'ship (In re Lexington Healthcare Grp., Inc.)*, 363 B.R.

713, 717 (Bankr. D. Del. 2007) ("Because a dispute exists about whether the security deposit is

property of the estate, this Court concludes that the Trustee cannot state a claim for turnover.").

35.     Additionally, even if Anadarko's denial were insufficient to show the existence of

a bona fide dispute (which it is not), Anadarko has asserted the affirmative defense of setoff in the

event that Ultra prevails on the Counterclaims.  Anadarko's Am. Answer to Countercl. at p. 9, ¶ 8.

Thus, Anadarko disputes not just the liability, but the *amount* of the any alleged debt Ultra seeks.

Accordingly, a turnover action is barred, and Ultra's turnover action should be dismissed.  *DHP*

*Holdings II Corp. v. Home Depot, Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 264, 271 (Bankr.

D. Del. 2010) ("[The Defendant's] answer disputing the account receivable and asserting

entitlement to setoff and recoupment is sufficient to render the debt disputed.").

## V.     CONCLUSION

36.     Ultra's Counterclaim against Anadarko is a post-confirmation breach of contract

claim.  The Court does not have subject matter jurisdiction to consider this claim because it has no

relation to the confirmed Plan, nor does it have any possibility of affecting the non-existent estate

or any creditors.  For similar reasons, the Court should abstain from exercising jurisdiction even if

it finds that subject matter jurisdiction exists.  Ultra's claims involve only state law issues, provide

no independent basis for federal jurisdiction, and will not have any bearing on the bankruptcy

proceedings.  Lastly, Ultra's "turnover" action fails on the pleadings.  Even accepting Ultra's

allegations as true, there is no estate to turn over the debt to, and Ultra admits there is a genuine

dispute over liability.  Accordingly, the Court should either dismiss Ultra's claims for lack of jurisdiction, or grant judgment on the pleadings in Anadarko's favor.

Dated: July 26, 2019                         Respectfully submitted,

                                             **WINSTON & STRAWN LLP**

                                             */s/ Melanie Gray*
                                             Melanie Gray
                                             Texas Bar No. 08327980
                                             S.D. Tex. Bar No. 2650
                                             1111 Louisiana Street, 25th Floor
                                             Houston, TX 77002
                                             Telephone: (713) 651-2600
                                             Facsimile: (713) 651-2700
                                             mggray@winston.com

                                             **ATTORNEY-IN-CHARGE FOR
                                             ANADARKO E&P ONSHORE LLC**

**OF COUNSEL:**

Katherine A. Preston
Texas Bar No. 24088255
S.D. Tex. Bar No. 26969884
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
kpreston@winston.com

### **<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 26th day of July, 2019, a true and correct copy of the foregoing document has been served via electronic notification to all parties of record.

<u>*/s/ Rick Smith*</u>
Paralegal